1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

ROBERT WILLIAM MOE,

11                    Plaintiff,

12        v.

13

CAROLYN W. COLVIN, Acting
14 Commissioner of the Social Security
Administration,
15
                    Defendant.
16

CASE NO. 3:15-cv-05794 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18 Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19 Magistrate Judge and Consent Form, Dkt. 6; Consent to Proceed Before a United States

20 Magistrate Judge, Dkt. 9). This matter has been fully briefed (*see* Dkt. 15, 19, 20).

21        After considering and reviewing the record, the Court concludes that the ALJ did

22 not commit harmful error in the evaluation of plaintiff's disability applications. The

23 ALJ's finding that some of the medical opinions were not consistent with plaintiff's

24

treatment records is based on substantial evidence in the record as a whole. In addition, the ALJ's decision to give greater weight to the opinion of an examining psychologist who provided the most recent assessment undertaken after plaintiff became clean and sober is appropriate as it is the ALJ's job to resolve conflicts in the medical evidence. In addition, the ALJ's reliance on plaintiff's poor work history, his work activity during the relevant time period, the fact that he stopped working for reasons unrelated to his impairments, and the fact that he declined an offer of a full-time job because "he had determined it to be too detrimental to his quality of life, would impact his ability to get medical care and continue its medications, and also he found that other, more local jobs, would pay better and require less of the time commitment," is proper and constitutes clear and convincing reasons for failing to credit fully plaintiff's allegations (AR. 746, 1208).

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, ROBERT WILLIAM MOE, was born in 1961 and was 45 years old on the alleged date of disability onset of September 25, 2006 (*see* AR. 126-32). Plaintiff has his GED and some college credits (AR. 768). Plaintiff has past relevant work as a construction worker, tractor-trailer driver, log truck driver, and engineering technician (AR. 747).  Plaintiff alleges that he was fired from his last job following an altercation with a coworker (AR. 768).

According to the ALJ, plaintiff has at least the severe impairments of "posttraumatic stress disorder (PTSD) in partial remission; panic disorder in partial

remission; depressive disorder; status post left shoulder surgery; polysubstance abuse in remission; and possibly a personality disorder (20 CFR 404.1520(c) and 416.920(c)" (AR. 733).

At the time of the hearing, plaintiff was living in an apartment with two dogs and two cats (AR. 766, 772).

<u>PROCEDURAL HISTORY</u>

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 75-78). Following a stipulated remand from this district court (*see* AR. 807-20), Administrative Law Judge Jo Hoenninger ("the ALJ") held a hearing on March 17, 2014 (AR. 757-89).  A supplemental hearing was held on May 21, 2014 (*see* AR. 790-802). On July 3, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 727-56).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ provided sufficient reasons to reject several examining physician opinions and the treating counselors' opinions; (2) Whether or not the ALJ provided sufficient reasons to discredit plaintiff; (3) Whether or not, given these errors, the RFC and hypothetical questions were complete, such that the step five findings were supported by substantial evidence (*see* Dkt. 15, p. 1).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Whether or not the ALJ provided sufficient reasons to reject several examining physician opinions and the treating counselors' opinions.**

Although the ALJ did not credit fully many of the medical opinions in the record, the ALJ gave "great weight" to the opinion of Dr. C. Quinci, Ph.D. (*see* AR. 744). Dr. Quinci examined plaintiff in January, 2014 (*see* AR. 1107-10). Dr. Quinci observed that although plaintiff was anxious and his speech was mildly tangential, he was cooperative, his affect was within normal limits, and his speech was within normal limits (AR. 1110). Similarly, although plaintiff demonstrated a paranoid perception, Dr. Quinci opined that plaintiff's thought process and content; orientation; memory; fund of knowledge; and concentration all were within normal limits (*see id*.). In addition, Dr. Quinci opined that plaintiff did not suffer from any marked level of impairment in performing work-related activities, and instead found that plaintiff was moderately impaired in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal work day and workweek without interruptions from

psychologically-based symptoms (AR. 1109). He opined that plaintiff only was mildly impaired or not impaired at all in his ability to understand, remember, and persist in tasks by following very short and simple instructions; learn new tasks; perform routine tasks without special supervision; adapt to changes in a routine work setting; make simple work-related decisions; ask simple questions or request assistance; communicate and perform effectively in a work setting; and set realistic goals and plan independently (AR. 1109). Dr. Quinci noted plaintiff's report that he had "prior serious rage, under control now" (AR. 1108). As noted by the ALJ, he diagnosed plaintiff with major depression, polysubstance abuse in remission, and a personality disorder – paranoid traits (AR. 744, 1108). The ALJ gave "great weight" to the opinion from Dr. Quinci because the examination occurred after plaintiff became clean and sober; it "is the most recent assessment of [plaintiff's] functionality and best reflects treatment notes showing improvement in anger management and increased engagement in social interactivity;" and also because of the ALJ's finding that it "is consistent with [plaintiff's] ability to participate successfully in group therapy" (AR. 744).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).  If the medical evidence in the record is not conclusive, sole

1   responsibility for resolving conflicting testimony and questions of credibility lies with the

2   ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v.*

3   *Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145,

4   150 (9th Cir. 1980))).

5              a.   Dr. Michael Brown, Ph.D., examining doctor

6              Regarding the opinion of Dr. Brown, plaintiff contends that the crucial limitation

7   opined by Dr. Brown was "very significant interference (marked) in the ability to respond

8   to and tolerate the pressures and expectations of a normal work setting" (Reply, Dkt. 20,

9   p. 1 (*citing* AR. 569, 592)). Plaintiff contends that the ALJ erred by failing to

10  accommodate this limitation into plaintiff's residual functional capacity ("RFC") (*see*

11  Opening Brief, Dkt. 15, pp. 4-8). As noted by the ALJ, Dr. Brown also opined that

12  plaintiff was "seriously disturbed" (AR. 570, 593, 740). Defendant contends that there is

13  no error as the ALJ gave greater weight to Dr. Quinci's opinion, which the ALJ found

14  was more consistent with some of plaintiff's mental health treatment records (Response,

15  Dkt. 19, p. 5 (*citing* AR. 741, 744)).

16              When an opinion from an examining doctor is contradicted by other medical

17  opinions, the examining doctor's opinion can be rejected only "for specific and legitimate

18  reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81

19  F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

20  1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§

21  404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or

22  other acceptable medical sources that reflect judgments about the nature and severity of

your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

The ALJ provided multiple reasons for failing to credit fully the opinions of Dr. Brown (*see* AR. 740-41). When explaining why he provided "only some weight" to Dr. Brown's opinions, the ALJ included the following discussion:

> Dr. Brown had only examined the claimant twice in a consultative capacity. His opinions do not square with Willapa Counseling Center psychotherapy notes showing improvement in anger management and increased engagement and social interactivity as well as the claimant's own self-assessment that medications were helpful in ameliorating symptoms and descriptions of himself as overall feeling better. Also, at the time of the assessment, the claimant was still using alcohol and marijuana. Any remaining limitations are addressed in a residual functional capacity statement restricting the claimant to unskilled work with limited social interactivity.

(AR. 740-41).

Previously in the written decision, the ALJ dedicated multiple paragraphs to evaluating the treatment records from Willapa Counseling Center (AR. 738-39). Regarding the finding by the ALJ that Dr. Brown's opinions of plaintiff's marked social limitations "do not square with Willapa Counseling Center psychotherapy notes showing improvement in anger management and increased engagement and social interactivity as well as the claimant's own self-assessment that medications were helpful in ameliorating symptoms and descriptions of himself as overall feeling better," the Court concludes that this finding is a specific and legitimate reason that is based on substantial evidence in the record as a whole for the failure to credit fully Dr. Brown's opinions. For example, on March 26, 2007, despite appearing sad and depressed, plaintiff's counselor, Mr. Frank

Glenn, M.A., LMHC, opined that plaintiff appeared "to recognize the nature of the problems which confront him" (AR. 329). Mr. Glenn noted that plaintiff "was an active participant in his therapy session this date," and that he "displayed an increasing ability to focus in the present, on matters of the 'here and now'" (*id*.). Mr. Glenn opined that this increasing ability "appears to be reducing his symptomatology" (*id.*).

Despite suffering from a month long bout of isolation reported on January 31, 2008, Mr. Glenn opined at that time that plaintiff "seems to have turned a corner in his recovery and was able to present for services today and was cooperative" (AR. 297). Furthermore, reports of plaintiff's improvement continued after this date.

For example, on April 10, 2008, plaintiff was taking his medications as prescribed, was sleeping well, and presented "in a euthymic, alert and interested mood" (AR. 287). Mr. Glenn opined that plaintiff's "sleep, focus and mood seem improved" (*id*.). Similarly, on May 22, 2009, according to Mr. Glenn, plaintiff "experienced a very fundamental challenge to his core delusional beliefs" (AR. 1239). Plaintiff had felt like he was being harassed in traffic by a former police officer, and was considering confronting him, but after talking with a staff member at the counseling agency about it "he was able to clear up the issue with the staff" (*id*.). At this time, as noted by the ALJ, plaintiff reported that "he found Integrative Group to be essentially positive and [reported that he would] return" (*id*.; *see also* AR. 739).

On August 11, 2010, plaintiff was in "a significant argument between himself, his mother and his brother" (AR. 1152). Although plaintiff's "mother grabbed [him] by the throat and threatened to have [him] move out," plaintiff reported that "he did not become

violent" (*id*.). This treatment record supports the finding by the ALJ that plaintiff "regularly reported being able to control his anger" (*see id.; see also* AR. 739). Also supporting this finding by the ALJ, is the note in the treatment record from August 3, 2012, where plaintiff reported, as noted by the ALJ, that he was taking care of his health, taking care of his mom, growing closer to the animals, and was "able to turn the other cheek a lot more these days and ignore what I believe is an affront" (AR. 1112). As noted by the ALJ, plaintiff reported at that time that he sees "a lot more good in people than I did before in comparison to six years ago when I started coming to Willapa" (*id*.).

Approximately 2 weeks after the argument with his mother and brother, on August 25, 2010, plaintiff reported having "one of the most challenging social interactions in recent years, with a group of contractors from Oregon" (AR. 1149). Plaintiff reported that he "used his assertiveness skills to relatively calmly address the contractors, which helped him to reduce his anger impulses" (*id*.). Although plaintiff's symptoms temporarily worsened after his mother passed away, and he experienced "natural grief responses," plaintiff reported on October 23, 2013 "finding comfort in his faith" (AR. 1559). Plaintiff also indicated that he felt that his "anxiety and depressive symptoms [were] lessening" (*id*.). At that time, his mental status exam indicated that he was "alert, pleasant, cooperative, [and] euthymic" (*id*.). Plaintiff indicated that he was "way better" after the crisis passed, indicated that he had awareness of his personal warning signs regarding his depression, and had been consistent in his choices to request support (AR. 1560).

1    Plaintiff contends that his treatment records demonstrate that his symptoms waxed

2  and waned. However, other than the opinion from Dr. Brown, plaintiff's citations in

3  support of this argument reflect time periods when plaintiff was not taking any

4  medication or are similarly unsupportive of this contention (*see* Dkt. 15, p. 8; *see also*

5  Dkt. 19, p. 7). Even if plaintiff's argument is persuasive, it is not the job of the court to

6  reweigh the evidence: If the evidence "is susceptible to more than one rational

7  interpretation," including one that supports the decision of the Commissioner, the

8  Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

9  (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th

10  Cir. 1999)). Here, the ALJ's interpretation of the record that plaintiff's impairments and

11  symptoms improved over time is a rational interpretation based on substantial evidence in

12  the record as a whole. *See id.* Therefore, for the reasons stated and based on the record as

13  a whole, Court concludes that the ALJ provided specific and legitimate reasons based on

14  substantial evidence in the record as a whole for his failure to credit fully the opinions of

15  Dr. Brown.

16       b.  Dr. Keith Krueger, Ph.D., examining doctor

17       Plaintiff contends that the ALJ erred by not providing sufficient reasons to reject

18  the opinion of Dr. Keith Krueger, Ph.D., who examined plaintiff on March 23, 2009 (*see*

19  Dkt. 15, pp. 8-10). Defendant contends that there is no error as the ALJ accounted for

20  marked limitations in social functioning and because the ALJ found that Dr. Krueger's

21  opinion was not as consistent with plaintiff's counseling notes as was the opinion of Dr.

22  Quinci (*see* Dkt. 19, p. 8 (*citing* AR. 742, 744)).

1    Along with other opinions, Dr. Krueger opined that plaintiff had marked

2    limitations in his ability to respond appropriately to and tolerate the pressures and

3    expectations of a normal work setting and to relate appropriately to coworkers,

4    supervisors and the general public (*see* AR. 484-91). As noted by the ALJ, Dr. Krueger

5    opined that plaintiff was "seriously disturbed" (AR. 487). In his written decision, the ALJ

6    provided multiple reasons for failing to credit fully the medical opinion of Dr. Krueger:

7
> Dr. Krueger's opinion is given only some weight. He stated that the
8    limitations he proferred would only last 12 months as a maximum. He
> conducted only a one-time evaluation and his assessment appeared based
9    largely on the claimant's self-report. The notations of anger and
> difficulties with others seem to come from the claimant's claims of being
10   fired from work for his anger, but this all occurred during a time when
> the claimant was using marijuana and alcohol, which suggests that drugs
11   and alcohol played a part in the firing. Dr. Krueger's opinion does not
> square with MA Glenn's therapy notes showing improvement in anger
12   management and increased engagement and social interactivity. Any
> remaining limitations are addressed in a residual functional capacity
13   statement restricting the claimant's social interactivity.

14   (AR. 742).

15    The Court already has discussed Mr. Glenn's therapy notes, that is, the Willapa

16   Counseling Center treatment record, *see supra*, section 1.a. The Court already has

17   concluded that the ALJ's interpretation of the record that plaintiff's impairments and

18   symptoms improved over time and that the Willapa Counseling Center psychotherapy

19   notes show improvement in anger management and increased engagement and social

20   interactivity are findings based on substantial evidence in the record as a whole, *see*

21   *supra*, section 1.a.

22

23

24

Based on the same records, as discussed above, the Court concludes that the ALJ's finding that "Dr. Krueger's opinion does not square with MA Glenn's therapy notes showing improvement in anger management and increased engagement and social interactivity" is a finding based on substantial evidence in the record as a whole. The Court also concludes that this finding entails a specific and legitimate reason for failing to credit fully Dr. Krueger's opinion. Therefore, even if the other reasons offered by the ALJ for failing to credit fully Dr. Krueger's opinion are not valid, this reasoning alone entails specific and legitimate rationale based on substantial evidence in the record as a whole. Therefore, Court concludes that the ALJ did not err when evaluating Dr. Krueger's opinion.

c.   Dr. Kimberly Wheeler, Ph.D., examining psychologist

Plaintiff contends that the ALJ did not provide sufficient reasons to reject the opinions from Dr. Wheeler (*see* Dkt. 15, pp. 10-12). Defendant notes that Dr. Wheeler referenced the fact that plaintiff was taking care of his ill mother and opined that he might be eligible to be a paid caregiver (*see* Dkt. 19, p. 8 (*citing* AR. 604-05)). Defendant also notes an opinion from Dr. Wheeler after her second examination, which also was quoted by the ALJ:

> [Plaintiff] is in the tough spot of not being so clearly incapacitated that he will easily be awarded Social Security benefits, but presenting enough characterologic symptoms that he has a difficult time tolerating others, and others likely to have a hard time tolerating him. He's quick to express an arch, stilted superiority, and has strong paranoid belief about others, particularly those in official roles (police, supervisors). He states he's depressed, but it reads as a dour, paranoid view of the world, rather than depression. He holds minimal expectation of change, in large part because he doesn't recognize his own beliefs/perceptions are the target

1    of therapy – he's more comfortable believing that others are the cause of
2    his problems.

3  (*Id.* at 8-9 (*citing* AR. 619); *see also* AR. 743). Defendant contends that the ALJ did not

4  err in evaluating the opinion from Dr. Wheeler as the ALJ gave greater weight to Dr.

5  Quinci's opinion because it was more consistent with plaintiff's counseling records (*id.* at

6  9 (*citing* AR. 743)).

7          Among other opinions, including those already noted, Dr. Wheeler opined that

8  plaintiff was markedly impaired in communicating and performing effectively in a work

9  setting with public contacts and in learning new tasks (*see* AR. 603). As noted by the

10  ALJ, Dr. Wheeler "also described his motivation for actual substantive change as low"

11  (AR. 743 (*citing* AR. 604)). Also as noted by the ALJ, Dr. Wheeler noted that plaintiff

12  claimed that his employment difficulties were related to his difficulty relating to people

13  because of his anxiety and his temper, and the fact that "the job market is in the toilet"

14  (*id.* (*citing* AR. 617)). The ALJ offered a number of reasons for failing to credit fully the

15  opinion from Dr. Wheeler:

16
17          Dr. Wheeler's opinions are given little weight, as they are not consistent
            with narrative report suggesting motivation was a good part of the
18          claimant's problem as well as the poor economy. Her checkbox
            assessment appears based largely on the claimant's self-report.
19          Moreover, her opinions do not square with detailed treatment notes
            showing improvement in anger management, increased engagement in
20          social interactivity as well as effective symptom management with
            psychotherapy and medication without side effects. They also are
21          inconsistent with the claimant's ability to successfully [participate] in a
            group therapy format. Finally the opinion was rendered prior to the
22          claimant becoming clean and sober from alcohol and marijuana.

23  (AR. 743).

24

1      The ALJ's reasoning is based on substantial evidence in the record as a whole. As

2  already discussed previously, *see supra*, section 1.a, the ALJ's finding that plaintiff's

3  treatment records demonstrate improvement in anger management, increased engagement

4  and social interactivity as well as effective symptom management is a finding based on

5  substantial evidence in the record as a whole. This rationale entails a specific and

6  legitimate reason based on substantial evidence in the record as a whole for the ALJ's

7  failure to credit fully the opinion of Dr. Wheeler.

8              d.   Dr. Bryce McCollum, Ph.D., examining psychologist

9      Plaintiff contends that the ALJ erred when evaluating the medical opinion of Dr.

10  McCollum (Dkt. 15, pp. 12-14). Defendant contends that there is no error because the

11  ALJ appropriately discounted the opinion of Dr. McCollum in favor of Dr. Quinci's

12  opinion, which the ALJ found is more consistent with plaintiff's treatment record (*see*

13  Dkt. 19, pp. 9-10).

14      Dr. McCollum examined plaintiff in November 2013 (AR. 1094-99). As noted by

15  the ALJ, Dr. McCollum diagnosed plaintiff with bereavement; major depressive disorder,

16  recurrent, moderate, in partial remission; PTSD, in partial remission; panic disorder with

17  agoraphobia, in partial remission; and polysubstance abuse, in remission (AR. 743 (*citing*

18  AR. 1098)). The ALJ gave Dr. McCollum's opinion some weight, but found that there "is

19  no support for the degree of limitation in the ability to make judgments on simple work-

20  related decision[s] or his interactivity problems" (AR. 743). The ALJ also found that this

21  assessment does not match plaintiff's performance during mental status examination and

22  that the interactivity issues are contradicted by plaintiff's cooperative behavior during the

1   examination, his ability to have lived successfully with his mother for years and have

2   created a relationship with at elderly mentor a church (AR 744). Finally, the ALJ found

3   that Dr. McCollum's opinion "also does not square with MA Glenn's therapy notes

4   showing improvement in anger management and increased engagement in social

5   interactivity nor with [plaintiff's] ability to participate successfully in group therapy"

6   (*id.*).

7        As noted already, the Court has found that the ALJ's finding that Mr. Glenn's

8   therapy notes demonstrate that plaintiff experienced improvement in his anger

9   management and increased engagement in social interactivity is a finding based on

10   substantial evidence in the record as a whole, *see supra*, section 1.a. The Court concludes

11   that the finding that Dr. McCollum's opinion "does not square" with Mr. Glenn's therapy

12   notes is a specific and legitimate reason based on substantial evidence in the record as a

13   whole for the ALJ's failure to credit fully this opinion. The Court finds no error.

14        e.   Willapa Counselors, Mr. Glenn and Ms. Jamey Burris-Fish, ARNP

15        Plaintiff contends that the ALJ erred by giving insufficient reasons to reject the

16   counselors' opinions (Dkt. 15, pp. 14-17). Defendant contends that there is no error.

17        On March 19, 2008, Ms. Burris-Fish opined that plaintiff's short-term memory

18   was fair, his remote memory was poor, his stream of thought was tangential and his

19   concentration was fair-poor, among other opinions (AR. 284). Her assessment included

20   many of plaintiff's statements about his symptoms and history (*id.*). The ALJ gave some

21   weight to Ms. Burris-Fish's opinion but found that she did not provide any functional

22   limitations (AR. 741). The ALJ indicated that issues regarding concentration and

attention were addressed in the residual functional capacity statement limiting plaintiff to unskilled work, and that his issues with pressured speech and difficulties with interactivity were addressed with restrictions on public, coworker and supervisory contact (*id*.). To the extent that the ALJ did not credit fully the opinion from Ms. Burris-Fish, the ALJ indicated that her "opinion does not square with Willapa Counseling Center psychotherapy notes showing improvement in anger management and increased engagement in social interactivity as well as [plaintiff's] own self-assessment that medications were helpful in ameliorating symptoms and descriptions of himself as overall feeling better" (*id*.).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, physician assistants, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The ALJ's finding that the opinion from Ms. Burris-Fish "does not square with Willapa Counseling Center psychotherapy notes  .  .  .  ." is a germane reason for failing to credit fully this opinion that is supported by substantial evidence in the record as a whole. Therefore, the Court concluded that the ALJ did not err in failing to credit fully the opinion from Ms. Burris-Fish (AR. 741).

Finally, the ALJ noted multiple opinions from Mr. Glenn, such as his opinion that plaintiff suffered from marked difficulties in maintaining social functioning, suffered from one or two episodes of decompensation of at least two weeks duration and that plaintiff would be absent about four days a month on average due to his impairments or treatment (AR. 742 (*citing* AR. 562-63)). The ALJ gave some weight to Mr. Glenn's opinions but noted that Mr. Glenn is not an acceptable medical source (*id*.). The ALJ also indicated that he failed to credit fully this opinion because the ALJ found that "the opinion is not entirely consistent with his own detailed treatment notes showing improvement in anger management, increased engagement in social interactivity as well as effective symptom management with psychotherapy and medication without side effects" (AR. 742-43). The ALJ also found that the opinion is inconsistent with plaintiff's ability to participate successfully in a group therapy format (AR. 743). In addition, the ALJ noted that the opinion was provided before plaintiff became clean and sober from alcohol and marijuana (*id*.).

Based on the record as a whole, the Court concludes that the ALJ's rationale for failing to credit fully the opinion from Mr. Glenn is germane and supported by substantial evidence in the record as a whole. The Court finds no error.

(2) **Whether or not the ALJ provided sufficient reasons to discredit plaintiff.**

Plaintiff contends that the ALJ erred when failing to credit fully plaintiff's allegations and credibility (Dkt. 15, pp. 17-18). Defendant contends that the ALJ properly evaluated plaintiff's credibility and notes that the ALJ relied on plaintiff's poor work history, his work activity during the relevant time period, the fact that he stopped working for reasons unrelated to his impairments, and the fact that he declined an offer of a full-time job because "he had determined it to be too detrimental to his quality of life, would impact his ability to get medical care and continue his medications, and also he found that other, more local jobs, would pay better require less of the time commitment" (Dkt. 19, pp. 11-13 (*citing* AR. 605, 745-46, 934, 937-42, 1097, 1099, 1208)).

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Here, the ALJ relied on plaintiff's poor work history, noting that in the 15 years prior to plaintiff's alleged year of onset, he earned substantial gainful activity levels in only five years, and that during the other 10 years he earned less than substantial gainful activity levels, including eight years with no earnings (AR. 745 (*citing* AR. 934)). This finding is based on substantial evidence in the record as a whole and has not been challenged by plaintiff (*see* AR. 934). The ALJ also relied on a finding that at his hearing, plaintiff reported being fired from his last job because of a near altercation with a coworker, however, in the record, plaintiff "reported being laid off from his last job because a lack of work, rather than for reasons related to his disability, and sought unemployment" (AR. 745 (*citing* AR. 605)). This reason, too, is supported by substantial evidence in the record as a whole (*see* AR. 605 ("laid off along with others due to lack of work")).

In addition to plaintiff's poor work history and the fact that he left his last job for reasons other than his impairments, the ALJ also relied on a finding that plaintiff reported successfully working at a nearby motel for three weeks (AR. 746 (*citing* AR. 1197, 1199)). The ALJ noted that although this work was not likely to have been performed at the substantial gainful activity level, "it suggests that notwithstanding [plaintiff's] various medical conditions, he maintains some ability to work" (AR. 746). These findings, also, are supported by substantial evidence in the record as a whole (*see* AR. 1199 ("[plaintiff] reports he will be working at a local motel for a period of about a month"); *see also* AR. 1197.

1    Finally, when failing to credit fully plaintiff's allegations, the ALJ relied on the

2    fact that in October, 2009, plaintiff reported declining to take a full-time job managing a

3    motel in Astoria (AR. 746 (*citing* AR. 1208)). This finding by the ALJ also is supported

4    by substantial evidence in the record as a whole as the record indicates that plaintiff

5    reported "that he declined to take a full-time, 24/7/365 job managing a motel in Astoria,

6    as he had determined it to be too detrimental to his quality of life, would impact his

7    ability to get medical care and continue his medications, and also he found that other,

8    more local jobs would pay better and require less of a time commitment" (AR. 1208).

9        For the reasons stated, and based on the record as a whole, the Court concludes

10   that the ALJ's reasons for failing to credit fully plaintiff's allegations constitute clear and

11   convincing reasons based on substantial evidence in the record as a whole. The court

12   finds no error.

13

14        (3)    **Whether or not, given these errors, the RFC and hypothetical**
                 **questions were complete, such that the step five findings were**
15               **supported by substantial evidence.**

16

17        As the Court has concluded that the ALJ did not commit any harmful error, and as

18   plaintiff offers no new arguments in support of the allegation that the RFC and the

19   hypothetical questions were incomplete, these final issues need not be discussed.

20   //

21   //

22   //

23   //

24

ORDER ON PLAINTIFF'S COMPLAINT - 20

1

<u>CONCLUSION</u>

2

Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3

matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

4

**JUDGMENT** should be for defendant and the case should be closed.

5

Dated this 18th day of April, 2016.

6

7

J. Richard Creatura
United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24